#### IN THE

## SUPERIOR COURT OF JUDICATURE.

#### FOR THE

### COUNTY OF HILLSBOROUGH, SEPTEMBER TERM,

## A. D. 1831.

## JONAS WOODS *versus* THE NASHUA MANUFACTURING COMPANY.

Where there is a grant by deed, in general terms, those terms may be limited and restrained by a recital, stating the object of the grant.

An act of the legislature authorized a corporation to make a canal, with locks and dams across a river, and towing paths upon its banks, and provided, that any person who might be damaged by the works of the corporation, might apply to the superior court and have his damages adjudged to him —it was held that this provision was not intended to give a remedy from time to time, as the damages might actually arise, but to give a remedy at once, for all the damages that might be sustained by having the lands perpetually subjected to the incumbrances laid upon them by the corporation, under the act.

THIS was a petition founded upon an act in addition to the act incorporating the said company. The first section of the act empowered the company " to build and construct a canal, together with such locks and dams across said Nashua river, and towing paths upon its banks, as they may think necessary, from Merrimack

river, in the town of Dunstable, to the southerly boundary of this state, along the course of Nashua river." The second section then provided, " that in all cases when any person shall be damaged in his property by the said company, for the purposes aforesaid, in manner as is above expressed, and the company aforesaid do not, within twenty days after being requested thereto, make or tender reasonable compensation to the acceptance of the person so damaged by them as aforesaid, the person so damaged may apply by petition to the superior court of judicature, sitting in the county where said injury shall happen, to have the damages by him sustained as aforesaid, estimated and adjudged to him."

The petitioner alleged in his petition, that he was lawfully seized of a valuable farm in said Danstable, and that the Nashua manufacturing company, on the 1st January, 1826, erected a dam across the said Nashua river, and from that time to the day of his presenting his petition, maintained and kept up a dam, thereby causing the water of the said river to overflow a part of said farm, whereby his grass and trees were destroyed, his farm deprived of nearly all the mowing land thereunto appertaining, his watering places rendered dangerous to his cattle, the communication between different parts of his said farm interrupted, his land greatly injured and rendered unfit for cultivation, and his farm greatly diminished in value. Wherefore he prayed to have the damages by him sustained as aforesaid, estimated and adjudged to him.

It was not denied, on the part of the respondents, that they had built and maintained a dam which had caused the water to overflow the land of the petitioner, as stated in the petition, but they relied upon the following facts as an answer to the petition.

In the year 1823, a contract, under seal, was made between the said Jonas Wood and Nathaniel Stevens, as follows :—

Whereas, Nathaniel Stevens—has purchased of James Patterson of Dunstable—his grist-mill, mill privilege, buildings and lands on the northerly side of Nashua river, above the main road, in said Dunstable, and the said Stevens contemplates obtaining a greater head of water than is now used, and for that purpose may raise the present dam, or build a new one, higher than the old dam now is, in doing which he must flow some of the land of Jonas Woods—and said Woods is willing that his lands should be so flowed, he receiving a reasonable compensation therefor, as is hereinafter provided. Now to effect the purposes aforesaid—this indenture, made this 12th June, 1823, between the said Stevens, on the one part, and the said Woods, on the other part, witnesseth, that the said Woods—does hereby for himself, his heirs, executors, administrators and assigns, covenant and agree, to and with the said Stevens, his heirs, executors, administrators and assigns, that he and they may, at their pleasure, build any dam or dams across the Nashua river, to any height which they shall please, and keep said dam or dams forever, whereby a part of said Wood's land shall be flowed, and that he, the said Woods, his heirs, executors and administrators, will be content with the compensation therefor, hereinafter provided, and that the same shall be in full, for his and their claim of damage for flowing said land.

Previously to the 1st January, 1826, all the right, title and interest, with all the privileges and appurtenances, which the said Stevens had in the grist-mill, mill privilege, buildings and lands which are mentioned in the indentures, as bought by him of James Patterson, were, by proper conveyances, legally vested in the respondents. And they relied upon their right, as the assignees of Stevens, to flow the land of the petitioner.

The answer of the petitioner to this, was, that the dam, which caused the injury, of which he complained, was not erected upon any land or mill privilege mention-

ed in the said indentures, but upon other lands further down the river.

And two questions were raised by counsel.

1st, Whether the said indentures gave to Stevens any right to flow the land of the petitioner, by erecting a dam at any other place than that mentioned in the indentures?

2d, Whether, upon this petition, the value of the right to flow the land forever, as now flowed by the respondents, was to be the measure of the damages to be ascertained and adjudged to the petitioner, or whether the enquiry was to be confined to the actual damages sustained before the time when the petition was presented.

*B. M. Farley*, for the respondents.

The contract between Woods and Stevens, contained in the indentures, is a grant to Stevens of the right to flow the land in question. It is true, that the most appropriate words have not been used to express the meaning of the parties, but if their intentions can be ascertained from the whole instrument, those intentions are to be carried into effect, if they may, without violating any established principle of law. No particular form of expression is necessary to constitute a grant. To show that the contract between Woods and Stevens was a grant of a right, the case of *Holmes* v. *Seller*, 3 Levintz, 305, is a direct authority. There the defendant granted and agreed with the plaintiff, and his heirs and assigns, that it should be lawful for them, at all times afterwards, to have and use a way through the close of the defendant. This was held to be a good grant of the way, and not a mere covenant. 2 Rolle's Ab. 56 Bacon's Ab. "Grant," F.; 4 Cruise, 112.

But the real question is, whether Stevens, in the exercise of the right granted to him, was at liberty to erect a dam at any other place than that mentioned in the indentures? If he was not, it is admitted that the respondents, having only his right, could not erect the dam in question under that grant, because it is not erected on the premises conveyed by Patterson to Stevens.

We contend that Stevens had a right, under that grant, to erect a dam, or dams, across Nashua river, at any place, and to any height he pleased. The contract gives such a right in express terms, without any restriction whatever. No reason can be conceived, why it should have been restricted. It was altogether immaterial to Woods where the dam, which was to cause the overflowing of his land, might be erected. He was to lose the use of his land at any rate. And although it may be a settled rule in the construction of deeds, that a particular recital of the occasion, object and intent will qualify and restrain subsequent general words, unless such subsequent words are so express as to show clearly and manifestly a different intention, yet in the instrument under consideration, it would seem that the subsequent words are sufficiently express to show that Woods did not intend to restrict Stevens to any particular spot. 1 Saund. 59, *Gainsford* v. *Griffith*; Cro. Car. 106, *Crayford* v. *Crayford*; 16 Johns. 114; 19 ditto, 102; 2 B. & P. 13, *Browning* v. *Wright*; 6 East, 507.

As to the question in relation to the damages, we think that the statute contemplates only one appraisement, so as to avoid further litigation and expense. In this way, ample justice may be done to the party injured. And in fact, it would be much more beneficial to the petitioner to receive the whole value of his property taken than to receive the damages that might be awarded to him from time to time. Any other construction of the act would render this remedy more expensive and vexatious than the ordinary mode of obtaining redress. There is no doubt that the legislature intended a grant, that would be beneficial to the company, and at the same time to furnish the owner of the land to be taken, a full and just indemnity for the loss of his property, without leaving it in his power to defeat the object of the grant, by subjecting the company to such expense and vexation as to deter them from proceeding in their enterprise. We

think that the construction for which we contend, may be fairly concluded to be the true one, from the circumstance that the act requires the petitioner to set out in his petition, his title to the land injured. No valuable purpose would be obtained by such a requisition, unless the whole value of the estate was to be estimated. We think there is a strong analogy between this act and the act making provision for the laying out of highways. The works contemplated by this act are as permanent and as lasting as public highways, and are for the benefit of the public. This analogy seems to us to furnish a conclusive argument in favor of our construction.

*C. H. Atherton,* for the petitioner, contended, that notwithstanding the broad sweeping terms used in the contract between Stevens and Woods, the meaning of the terms must be restrained and limited by the object which the parties appear, on the face of the instrument, to have had in view. 3 Dane's Dig. 576 ; Powell on Contracts, 385 and 390 ; Cro. James, 170.

This dam was not built on the land mentioned in that contract, nor for any purpose which the parties to that contract had in view, but under a charter authorizing the corporation to divert, and for the purpose of diverting, the water of the Nashua river into a canal.

That contract related most manifestly to a dam or dams, to be built on the land bought by Stevens of Patterson, and cannot be construed to authorize any flowing by a dam built in another place.

With regard to the damages, the act makes no provision for ascertaining any future damage that may arise to the party. Nor was any such provision practicable. The nature of the soil may be such that the quantity of land injured may go on increasing from year to year. It is so in this very case. But even if the quantity of land that may be eventually injured could now be ascertained, there are so many circumstances that may augment or lessen the damages in different future years, that no calculation can be made on the subject.

The opinion of the court was delivered by

RICHARDSON, C. J.  With respect to the indentures between Stevens and Woods, we take it to be a settled rule of law, that where there is a recital in a deed stating the views and objects of the parties, and this is followed by a grant in general terms, in order that the real intention and meaning of the parties may prevail in the construction of the instrument, the general words may be limited by the recital.  Now, in this case, it is stated in the recital, that Stevens had bought a certain mill and mill privilege, and contemplated obtaining a greater head of water than was then used, and might raise the old dam or build a new one, higher than the old one then was, which might flow Wood's land.  It is then stated, in express terms, that to effect these purposes the grant is made.  Nothing can be clearer, than that the dams contemplated by the parties, were to be on the spot mentioned in the indentures.

The occasion of the contract, and the views and intentions of the parties being thus clearly disclosed in the recital, we have no doubt that the general terms in which the grant is made, are limited and restrained by the recital.  The contract cannot, in our opinion, by any fair construction, be made to extend to a dam erected in another place, and for a purpose widely different from any thing that could have been contemplated by the parties to the indenture.  This construction of the instrument is strongly fortified by the consideration that the construction, for what the respondents contend, would render the recital in the indentures idle, useless, and unmeaning.

As to the damages, the corporation was authorized by the act to make a canal along the course of the Nashua river, and to build dams across the river, and to make towing paths upon its banks.  This could not be done without taking, for the purpose, the lands of individuals, nor without erecting works that might affect those lands;

and the provision in the act which we are now considering, was intended to give a remedy to those whose lands might be thus taken, or affected.

Such a provision ought to be so construed, without doubt, as to afford a full and complete remedy to those entitled to redress. But on the other hand, care must be taken in giving a construction to the act, to protect the corporation from all needless and vexatious expense and trouble in the application of the remedy.

Individuals might be damaged under the act by having their lands taken for the canal, or for towing paths, as well as by having their lands flowed, by reason of dams erected by the corporation ; and the same remedy is given in all cases. And the real question is, whether this provision was intended to give a remedy in all these cases, for they all stand on the same ground, for the damages actually sustained from time to time as they might arise ; or whether it was intended to give a remedy, at once, to those whose lands might be affected by the works of the corporation, for the damage sustained by having their property subjected, perpetually, to the incumbrances laid upon it by the corporation under the act ?

We are, on the whole, of opinion, that the provision is to be understood in this last sense. The works of the corporation are, without doubt, intended to be permanent, and so far as they affect the lands of individuals, may well be considered as perpetual incumbrances. We think that the damage to be recovered by an individual, is the damage he may sustain by having his property subjected to such an incumbrance. This construction gives to those who are injured, a better remedy to obtain all which in equity and justice ought to be obtained, than any other construction. If land be taken for a canal, or for a towing path, or be flowed, the full value of the land to the owner, in every point of view, may be recovered. The damages should be estimated liberally, and every

inconvenience to which the owner of the land may be subjected considered and compensated.

It has been said in the argument, on the part of the petitioner, that the future damages cannot be estimated, and that the dam may be discontinued. With regard to the damages, there is no more difficulty in estimating those resulting from having lands subjected to these incumbrances, than there is in estimating the damages resulting from any other kind of incumbrance. The assessment of damages for a breach of a covenant against incumbrances is a matter of common occurrence. With respect to the discontinuance of the dam, such an event will not be presumed nor regarded in the assessment of damages ; and if it should happen, so much the better for the owner of the land, he will then have his land again free from the incumbrance. Indeed, we do not see that there is any just and legitimate purpose which this petitioner can have in view, which demands the construction of this provision for which he contends.

On the other hand, such a construction puts it in the power of those who may be injured, to make the remedy, in the highest degree, inconvenient and vexatious, and unnecessarily expensive to the corporation. The lands of many individuals may have been affected by the works of the corporation—and to be compelled to pay, from time to time, such damages as all those individuals might be disposed to demand, or be subjected to the trouble and expense of having the damages ascertained in the manner prescribed by the act, would be a burthen, which we think the legislature would not have imposed unnecessarily upon any corporation.

If the intention had been that the damages should be paid, from time to time, as they might be actually sustained, provision would, without doubt, have been made, at least, to ascertain and fix a sum to be paid at stated periods, subject to be increased or diminished, upon the application of the parties, as circumstances might re-

quire. But the act contains no such provision. If the construction for which the petitioner contends, is the true construction, the corporation must pay to all who are injured what they may be disposed to demand, or be liable to this process in every case, at every term of this court in this county. Such a construction is manifestly calculated to be too vexatious and inconvenient to the corporation to be admitted, without strong and cogent reasons to support it. Such reasons we do not find, we have, therefore, no hesitation in rejecting that construction.